IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHERYL MILLER *et al.*,  )
)
Plaintiffs  )
)   Civil Action No.: 10 C 5381
v.  )
)   Suzanne B. Conlon, Judge
MARCIA KOZEL, *et al.*,  )
)
Defendants.  )
)
)

**MEMORANDUM OPINION AND ORDER**

Cheryl Miller brings this suit on her own behalf and as the administrator of the estate of her son, Jamal Miller. Jamal committed suicide while in custody of the Illinois Youth Center in St. Charles, Illinois. Miller sues the State of Illinois, two juvenile justice specialists ("JJS")[1], four state-employed doctors, the facility superintendents at each of the facilities Jamal was housed, and the director of the Illinois Department of Juvenile Justice ("IDJJ"). She raises claims for constitutional violations under 42 U.S.C. § 1983, violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and § 405 of the Rehabilitation Act, 29 U.S.C. § 794, and state law claims. Before the court are two motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2).

---

[1] Juvenile Justice Specialists supervise and care for incarcerated youth. They perform tasks similar to guards in adult prisons but also have additional duties particular to working with juveniles. *See* Illinois Department of Central Management Services Class Specification: Juvenile Jsutice Specialist, http://www.state.il.us/cms/download/pdfs_specs/21971.pdf.

1

## I. Background

The following facts are taken from the complaint and assumed true in this opinion. Sixteen-year-old Jamal was incarcerated as a juvenile in 2009. Compl. ¶ 17. He was placed in the Illinois Youth Center in Kewanee, a facility for juveniles with serious mental health problems. *Id.* ¶ 19. Jamal had a history of mental illness, including previous suicide attempts, one by hanging. *Id.* ¶¶ 18-19. In July 2009, Dr. Victor Kersey, Kewanee's clinical director, concluded Jamal had a "lack of immediate mental health needs or concerns" and was "not appropriately placed in Kewanee Special treatment as [he] does not require intensive mental health treatment." *Id.* ¶ 20. Kersey concluded Jamal's primary problem was "criminal thinking" not mental health issues. *Id.* ¶ 41. He recommended Jamal be transferred to the Illinois Youth Center in St. Charles, a less intensive treatment program and less protective environment. *Id.* ¶ 20. Dr. Jennifer Jaworski, the Behavioral Health Service Administrator for the IDJJ, and Dr. Jolene Harbaugh, St. Charles's treatment administrator, concurred with Kersey's recommendation. *Id.* ¶ 21. Jamal was transferred on August 5, 2009. *Id.* ¶ 22.

At St. Charles, Jamal was placed in a room by himself and was locked in every night. Compl. ¶ 24. Psychiatrist Dr. Mallikarjuna Kanneganti evaluated Jamal on August 8, 2009. *Id.* ¶¶ 9, 23. Jamal wanted to stop taking his medications, and Kanneganti did not see a reason to force Jamal to take them. *Id.* ¶ 23. Therefore, Kanneganti discontinued Jamal's medication. *Id.*

On August 31, 2009, Jamal had a confrontation with JJS Natalie Finley. Compl. ¶ 34. Finley, who was aware of Jamal's high risk for suicide, made derogatory comments about Jamal's family members and refused to accept his apology. *Id.* ¶¶ 34-35. Despite knowing Jamal was upset, she did not have Jamal placed on a more intensive suicide watch. *Id.* ¶ 35.

2

In the early morning hours of September 1, 2009, Jamal used his bedding and clothing to form a noose to hang himself from his bunk bed. Compl. ¶ 26. The bunk bed had a sturdy horizontal metal bar across the top, and that type of bed had been involved in three previous suicides and 21 prior suicide attempts in Illinois youth correction facilities. *Id.* ¶ 25. In addition, there have been approximately 175 serious suicide attempts and seven suicides in Illinois juvenile corrections facilities over the past ten years. *Id.* ¶ 44. Before hanging himself, Jamal posted a note stating "RIP Jamal Damerco Miller" on his cell door's observation glass, obscuring more than a third of the window. *Id.* ¶ 27. He left a note on his cell wall, stating, "If your reading this letter Ms. Finley I want you to know your what pushed me off the edge and thank you for your Help." *Id.* ¶ 36.

JJS Marcia Kozel was working the night Jamal committed suicide. Compl. ¶ 28. She was required to perform visual security checks on him every 15 minutes. *Id.* Even though she knew Jamal was a suicide risk, she did not check on him as required. *Id.* ¶ 29. She did not check on Jamal until after 3:00 a.m., when she discovered Jamal had hung himself. *Id.* ¶¶ 29-30. By then, Jamal had only a weak pulse and it was too late to save him. *Id.* ¶ 30. Kozel falsified the records of her required security checks and made false statements to investigators about the security checks. *Id.* ¶ 32.

Miller filed this seven-count complaint. In Count I she claims the doctors and JJSs were deliberately indifferent to Jamal's risk of suicide and failed to protect him. Count II raises due process and equal protection claims under the Fifth and Fourteenth Amendments against the doctors, JJSs, facility superintendents, and IDJJ director. Count III alleges the State of Illinois violated the ADA and the Rehabilitation Act. Count IV raises a claim against the facility

3

superintendents and IDJJ director under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The remaining counts raise state law claims. Count V, against the JJSs, facility superintendents, and IDJJ director, is a wrongful death claim alleging negligence. Count VI alleges the doctors and JJS Finley intentionally inflicted emotional distress on Jamal. Count VII is a wrongful death claim alleging medical malpractice against the doctors. Dr. Kanneganti filed one motion to dismiss, and another was filed by JJSs Kozel and Finely; Drs. Harbaugh and Jaworski; Superintendents Lisa Nordstrom and Kurt Freidenauer; IDJJ Director Bobby Moore; and the State of Illinois. Dr. Kersey did not move to dismiss, and he answered the complaint.

## II. Analysis

On a motion to dismiss, all well-pleaded allegations in the complaint are accepted as true. *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010). All reasonable inferences are taken in Miller's favor. *Id.* Those allegations and reasonable inferences must show Miller's right to relief is plausible, not just speculative. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403-05 (7th Cir. 2010).

### A. Count I: Deliberate Indifference (Dr. Harbaugh, Dr. Jaworski, Dr. Kanneganti, Dr. Kersey, JJS Kozel, JJS Finley)

Drs. Kanneganti, Harbaugh, and Jaworski argue Miller fails to state a deliberate indifference claim against them. They contend the allegations constitute at most inadequate treatment due to negligence or a disagreement about a treatment plan. Miller responds that all three doctors could be liable for ignoring the long-standing danger of suicide for juveniles in youth correction facilities. She contends the 175 serious suicide attempts and seven suicides in Illinois juvenile corrections facilities over the past ten years establishes the doctors were aware of

4

a substantial risk of harm. She contends the doctors are deliberately indifferent because nothing has been done. Additionally, she argues Kanneganti's decision to discontinue Jamal's medications and Harbaugh and Jaworski's approval of the transfer from the more intensive treatment center could be such substantial departures from accepted professional judgment, practice, or standards as to constitute deliberate indifference.

The Eighth Amendment imposes a duty on juvenile justice officials to provide incarcerated juveniles adequate conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This includes protection from self-harm. *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001). Miller must show that Jamal was "incarcerated under conditions posing a substantial risk of serious harm" and that defendants were deliberately indifferent to the risk that he would commit suicide. *Farmer*, 511 U.S. at 834, 837. The deliberate indifference standard requires that a defendant be personally involved in the alleged constitutional violation and actually aware of the risk of harm; negligence is insufficient. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009).

Miller's claim that the doctors ignored a long-standing danger of suicide for incarcerated youths in general is essentially a claim that Illinois's policy concerning suicide in its juvenile corrections facilities is inadequate. A policy claim is normally brought against municipalities. However, Miller may not bring a § 1983 claim for damages against the state or state officials in their official capacity. *Ill. Duneland Preservation Society v. Ill. Dep't of Natural Res.*, 584 F.3d 719, 721 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 2367 (2010). Miller must therefore show the doctors were personally responsible for allegedly inadequate policies, either through directing the conduct that caused the constitutional violation or having knowledge of it. *Sanville*, 266 F.3d at

5

740. Miller does not identify the policies she claims are inadequate with the exception of the facility's choice to use a particular bunk bed in the cells. Assuming the choice of bed posed a substantial risk to inmates, Miller has not alleged any connection between the doctors and the beds. This theory of deliberate indifference fails.

The same is not true of the alleged individual acts of the doctors. Although negligence or medical malpractice is insufficient for liability under § 1983, a doctor's treatment decision may be deliberately indifferent if it is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Gayton v. McCoy*, 593 F.3d 610, 622-23 (7th Cir. 2010) (quoting *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996)). At this point in the litigation, the court cannot conclude as a matter of law that Dr. Kanneganti's decision to discontinue Jamal's medication and Drs. Harbaugh and Jaworski's transfer approval were based on professional judgment. The complaint is silent about the basis for the doctors' decisions.

**B. Count II–Due Process & Equal Protection (JJS Kozel, JJS Finley, Dr. Harbaugh, Dr. Jaworski, Dr. Kanneganti, Dr. Kersey, Director Moore, Superintendent Nordstrom, Superintendent Freidenauer)**

Defendants argue, and Miller agrees, that the Fifth Amendment is inapplicable because the suit is against the state, not the federal government. The Fifth Amendment claim is dismissed.

Defendants contend Miller has not stated an equal protection claim because she alleges none of the required elements: Miller fails to identify the suspect class Jamal is a member of, fails to identify any similarly situated member outside the class, and fails to plead he was treated differently because of his membership in the class. Miller responds that she is not bringing an

equal protection claim based on Jamal's membership in a suspect class. Rather, she asserts the claim is based on differential treatment that was arbitrary and irrational. She alleges Jamal was treated differently from other inmates with similar mental health problems for whom defendants provided appropriate conditions of confinement.

A claim of differential medical treatment not based on membership in a suspect class is ill-suited for an equal protection claim. Miller essentially argues Jamal was in a class of one and contends he was similarly situated to inmates with similar mental health problems. However, class-of-one claims require "clear standard[s] against which departures, even for a single plaintiff, could be readily assessed." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 600 (2008). When a suspect class is not at issue, government action is presumed rational, and a plaintiff must negate any possible explanation for the differential treatment. *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005); *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992). When decisions are discretionary and based on subjective, individualized assessments, a myriad of possible reasons for the differential treatment exist, making a class-of-one claim inappropriate. *Engquist*, 553 U.S. at 602-05. A medical treatment decision is the type of individualized, subjective decision that cannot be readily compared to the treatment of others. The equal protection claim is insufficient as a matter of law.

Defendants argue Miller has not stated a Fourteenth Amendment due process claim either because the Fourteenth Amendment applies only to pretrial detainees, not to inmates who have been convicted. Miller responds that she relies on a substantive due process right not to be held in unsafe conditions of confinement based on the special relationship Jamal had with the state.

Jamal had a right under the Eighth Amendment not to be held in unsafe conditions of confinement, and therefore substantive due process does not apply. If a claim is covered by a specific constitutional provision, the claim falls under that provision and not substantive due process. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"). The only case Miller cites applying substantive due process in a prison setting, *Bono v. Saxbe*, 620 F.2d 609 (7th Cir. 1980), has been undermined by subsequent Supreme Court cases, and its reliance on substantive due process has been questioned. *See Miller v. Henman*, 804 F.2d 421, 427-28 (7th Cir. 1986) (noting *Hewitt v. Helms*, 459 U.S. 460 (1983), contradicts *Bono*'s holding that prisoners have a substantive due process right not to be subject to certain restrictive conditions). The substantive due process claim fails.

**C. Count III: Americans with Disabilities Act & Rehabilitation Act (State of Illinois)**

Illinois argues Miller does not state a claim under the ADA or the Rehabilitation Act. The state assumes Jamal's mental disability was a handicap and the benefit he sought was more intensive mental health care and treatment. Illinois argues the claims cannot go forward because neither claim can be based on a "medical treatment decision." It also contends Miller did not plead a necessary element—that Jamal was denied treatment solely because of his disability. Miller contends these claims are not based on the medical treatment Jamal did or did not receive, but rather on the failure to provide a reasonable accommodation for Jamal's mental illness.

Specifically, she contends placing Jamal in a cell with a bed officials knew could be used to commit suicide was not a reasonable accommodation.

ADA and Rehabilitation Act claims are analyzed under the same standard, so for simplicity the opinion refers only to the ADA. *Gratzl v. Office of Chief Judges*, 601 F.3d 674, 678 n.2 (7th Cir. 2010). The ADA protects a "qualified individual with a disability" from being excluded from programs or services, denied a benefit, or treated differently because of the disability. 42 U.S.C. § 12132; *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). Key to the claim is an exclusion, denial, or differential treatment. Miller claims Jamal's disability could have been accommodated by giving him a different bed. However, she does not allege that other inmates were given a different bed or that Jamal was denied a different bed because of his mental illness. Therefore, her ADA claim does not allege Jamal was denied anything because of his disability. The ADA and Rehabilitation Act claims must be dismissed.

### D. Count IV—*Monell* Policy Claim (Director Moore, Superintendent Nordstrom, Superintendent Freidenauer)

Defendants argue *Monell* does not apply because Director Moore, Superintendent Nordstrom, and Superintendent Freidenauer are state, not municipal, employees. They correctly assert *Monell* applies only to municipalities. *See Joseph v. Bd. of Regents*, 432 F.3d 746, 748-49 (7th Cir. 2005) ("The [Supreme] Court has been clear, however, that *Monell*'s holding applies only to municipalities and not states or states' departments"). Miller concedes *Monell* is inapplicable, but asserts that is merely a misnomer; the complaint nonetheless states a claim against Moore, Nordstrom, and Freidenauer in their individual capacities for supervisory liability under § 1983. The complaint is not a model of clarity regarding these defendants' personal

involvement in the alleged constitutional violations. Therefore, the court will not construe this claim as a § 1983 claim against the superintendents and director. Instead Count IV is dismissed without prejudice.

**E. Count V—Negligence/Wrongful Death (JJS Kozel, JJS Finley, Director Moore, Superintendent Nordstrom, Superintendent Freidenauer)—and Count VI—Intentional Infliction of Emotional Distress (Dr. Harbaugh, Dr. Jaworski, Dr. Kanneganti, Dr. Kersey, JJS Finley)**

Defendants argue the court lacks subject matter jurisdiction over the state law negligence and intentional infliction of emotional distress claims under the doctrine of sovereign immunity. They contend the claims center on defendants' duty to protect Jamal from suicide while a resident at a youth corrections facility. They conclude this duty to protect arises solely from their employment with the state. Miller disagrees, stating she alleges "breaches of duties owed by all individuals in Counts V and VI, not duties owed only by state employees." Pl. Resp. to Certain Defs. (Dkt. 32) p. 10. She does not explain what those duties are.

Federal courts follow state rules of immunity with respect to state causes of action. *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003). Illinois allows itself to be sued for state tort claims only in the Illinois Court of Claims. 705 ILCS 505/8(d); *Loman v. Freeman*, 890 N.E.2d 446, 452-53 (Ill. 2008). A plaintiff cannot attempt to avoid the limits of sovereign immunity by naming an individual state employee as defendant. *Loman*, 890 N.E.2d at 453. Instead the issues involved and the relief sought control whether the suit is actually against the state. *Id.* An action is against the state when "(1) [there are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of

State employment; and (3) . . . the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State." *Jinkins v. Lee*, 807 N.E.2d 411, 418 (Ill. 2004) (internal quotation marks omitted). Miller bears the burden of showing subject matter jurisdiction exists. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

Miller has not met her burden. Defendants claim a duty to protect Jamal arises solely out of their employment with the state. Miller does not posit another possible duty defendants may have had to Jamal, and her general reference to Counts V and VI is unhelpful. Neither count states particular duties owed to Jamal. Presumably, the duties are set forth in paragraphs 1-50 of the complaint, which are incorporated in each count by reference. The court will not scour the complaint for possible duties for each defendant and then analyze the source of those duties to determine whether it has subject matter jurisdiction. Counts V and VI are dismissed without prejudice under Rule 12(b)(1).

## F. Count VII—Medical Malpractice-Wrongful Death (Dr. Harbaugh, Dr. Jaworski, Dr. Kanneganti, Dr. Kersey)

Defendants argue Count VII should be dismissed because Miller did not file the certificate of merit from a health professional as required by Illinois law for a medical malpractice claim. 735 ILCS 5/2-622(a)(1)[2]. Miller responds that her complaint falls within an exception that allows a plaintiff to file the report 90 days after filing the complaint. The exception applies if the consultation could not be obtained before the statute of limitations

---

[2] Section 622 was amended by Public Act 94-677, effective August 25, 2005. The Illinois Supreme Court held Public Act 94-677 unconstitutional in its entirety. *Lebron v. Gottlieb Memorial Hosp.*, 930 N.E.2d 895, 914 (Ill. 2010). Therefore, the court applies § 622 as it read prior to the amendment.

11

expires. *Id.* 5/2-622(a)(2). Miller contends a one-year statute of limitations under the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/8-101, might apply to some of her claims and therefore she relied on that period in filing her complaint.

Although the required expert report is a pleading requirement under Illinois law, it applies to Illinois medical malpractice actions in federal court. *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). Defendants contest which statute of limitations applies. It is clear the statute Miller identifies does not apply. *See* 745 ILCS 10/1-206 (excluding actions against the state and any state officer, department, or agency from 745 ILCS 10/8-101). But regardless which period applies, Miller did not comply with the statute. She has since filed the certificate of merit but did so more than 90 days after filing the complaint. Failure to comply with the statute results in mandatory dismissal. 735 ILCS 5/2-622(g).

### III. Conclusion

For the foregoing reasons, Counts II, III, and VII are dismissed. Counts IV, V, and VI are dismissed without prejudice. The motion to dismiss is denied as to Count I.

ENTER:

Suzanne B. Conlon
United States District Judge

December 6, 2010